Good morning. May it please the court, my name is Stephen Montoya. I'm here on behalf of the appellant, the Arizona Students' Association. I think that the district court erred fundamentally in two different ways. Initially, the district court erred in concluding that the issue of retaliation was alien to this case. In fact, the motive for the initial suspension and subsequent revocation of the Arizona Board of Regents' collection of the ASA student fee, the motivation for doing that is material because, as your honors are aware, in fact, the most important element in a First Amendment retaliation claim is motive. A retaliation case is all about motive. The district court concluded, citing the United States Supreme Court's opinion in O'Brien v. the United States, that it could not look behind the motives of the Arizona Board of Regents in suspending, revoking, and then substantially modifying the board's collection of the fee because motive is irrelevant. But in fact, the O'Brien case is not material to the adjudication of this dispute. The O'Brien case was a case that involved criminal conduct mixed with expressive activity. The O'Brien case is a famous case. It's the draft burning case. And the United States government owns draft cards in the same way that the United States government owns its passports and other important forms of identification. And the United States government has an interest in preserving those types of its property and prohibiting their destruction, even if such destruction does have an element of political speech. For example, the United States government has declared that it's unlawful to deface its buildings because vandalism is a bad thing, especially when it's the government's property. And the mere fact that someone is also expressing their displeasure with the government in breaking a government window doesn't mean that that criminal conduct is otherwise immunized. Moreover, but just as fundamentally, the O'Brien case is inapplicable in this case because the O'Brien case involved a statute created by a co-equal branch of the United States government, specifically the United States Congress. In this case, we clearly have an administrative act. The Arizona Board of Regents is substantively equivalent to a school district or a school board. It's not a legislative body. It's not a co-equal branch of government. And consequently, its decisions are not subject to the deference that ordinarily is afforded to congressional acts. And lastly, the O'Brien case is inapplicable because the O'Brien case doesn't involve retaliation. Well, okay. So let's get to the facts here. Yes, Your Honor. The basic claim is that the ABOR retaliated against the Arizona State Student Association by stopping to collect certain fees through the tuition process in retaliation for the Arizona Student Association's exercise of political activity that the governor opposed. That's correct. Okay. So if we were to ‑‑ but you're suing the Board of Regents. If we were to agree that the Board of Regents is immune, how would you amend your complaint? We would amend our complaint, which we were not allowed to do below, to include the individual members of the Board of Regents. In their official capacity. In their official capacity, some of them perhaps in their individual capacities. It's not a big deal. The reason why we did sue the Board of Regents, even though we're not fighting that here, is because the Board of Regents, unlike most governmental State agencies in the State of Arizona, in fact can sue in its own name. It's more like a school district, which you can sue separately. We have a case law that says it treats them as an entity of the State. Yes, Your Honor. An arm of the State. So we're not going to fight that here. Right. We'd just substitute defendants. It would be an easy amendment. So the other part of this ‑‑ I have two questions for you. One, they ‑‑ there's a substantial benefit here that you're deprived of. Yeah. Is it really a substantial benefit for purposes of First Amendment activity? Yes, Your Honor. Not only is it a substantial benefit, in our view ‑‑ I mean, the Board was under no obligation to participate in the ‑‑ in the collection and remittance to the student organization. I guess being a generously helpful governing body and trying to do nice with the students. Right? That's correct. Here's an analogy. And they did it for a number of years. They did it for about 15 years before all this happened. They did. And for 24 years before that, they actually directly funded ASA with their own money. Right. Then they had to be more frugal. I'm sorry. I'm sorry. I think the real reason was they wanted ASA to be more independent. But let me give you an analogy. It happens all the time. The government decides to fund public housing. The government doesn't have to do that. That's something that is discretionary with the federal government. They build a beautiful apartment complex for the poor. But they didn't have to do that. But when the poor turn around and vote Republican in the next election, after they get over their shock, they decide that they're going to close the housing down. Even though the government didn't have to create the facility, once it did, it could not take away that benefit consistent with the First Amendment. And, in fact, this Court has considered that very issue in a somewhat analogous case, and that is the case of Prince v. Jacoby. In that case, a school district decided to give benefits to some student groups, including letting them use the public announcement system, letting them use their supplies free of charge, letting them use free transportation. And in that case, which is familiar to some members of the Court, or to all members of the Court, rather, the Court acknowledged, quote, "'While certainly not required to grant student clubs access to these benefits, the school has chosen to do so. Having done so, it cannot deny access to some student groups because of their desire to exercise their First Amendment rights without compelling government interest, without a compelling government interest that is narrowly drawn to achieve that end.'" That's a different kind of First Amendment case. But I understand your point. Let me ask you a more practical question. So after all of this happened, the legislature stepped in and said, Board of Regents, you can't do this unless you have control over the entity, the third party entity. Yes. Right? That's true. But that's not an issue. Okay. Let me explain to you. So the only thing you can get, let's assume you go back down, you prevail and you go back down to the district court. And I'm just saying assume this for a moment. I'm understanding. Yes. And you add in your officials. Yes. The individual board members in their official capacity. And under the Eleventh Amendment, you can't get retrospective relief. You can't get damages. Okay. So what relief are you going to get, are you seeking, who goes back down? I'll explain. It's going to be relatively easy. We're going to have to amend our complaint anyway to include the individuals. But because individuals have to enforce that statute, Judge Pius, that you just summarized, that gives us another opportunity to challenge that legislative action, because we believe that the history of that legislation will in fact reveal the identical retaliatory intent that predicated this act, because in fact they were highly related. Some of the same characters were involved. If that proves that, then you're seeking prospective injunctive relief to enjoin that statute. Yes, Your Honor. And because it will be the university officials that will be the ones enforcing that statute will have actually named the proper plaintiffs, the proper defendants rather, when we substitute them if we are given the opportunity to amend our complaint in the district court. So that's the practical import. This statute, I mean, it says that the Board of Regents can't collect monies on behalf of an organization not under the jurisdiction of the Arizona Board of Regents and not recognized as a university student organization. Isn't the Arizona Students Association under the jurisdiction of the Arizona Board of Regents? We believe it is, Your Honor. That's a very good point. And also, isn't it recognized as a university student organization? Yes, Your Honor. So is this really a prohibition on the Board of Regents collecting the fees? Arguably, we don't believe we think that a good argument could be made that the statute is inapplicable. However, if in fact it is applicable, we believe that it's predicated by the same retaliatory intent and consequently still subject to the identical First Amendment retaliation claim. Another interesting point, going back to your original question, Judge Paez, what's the harm? There are some really famous cases. Elrod v. Burns. It took me forever to find that case. I knew it was out there somewhere. It's the penny case where the court says that, hey, even if you punish a Republican one penny for being a Republican or give a Republican, and it uses the Republican partisan label, if you give a Republican one penny for being a Republican, that violates the First Amendment. So one penny is a substantial impairment under the Constitution according to the United States Supreme Court. And the Rutan case was decided back in 1976, but more recently, I mean, the Elrod case was a 1976 case. The Rutan v. Republican Party, Illinois case was decided by the Supreme Court of the United States in 1990, and it said that something as trivial as taking away a birthday party in retaliation for free speech was a substantial benefit. And lastly ---- But I don't even think we need to get there because it's, I mean, isn't it just well known that if it's collected as part of, I mean, I'm sure you can have an expert testify to this, if the $1 or $2 is collected as part of tuition, everyone's going to pay it. So it's going to be a lot more money than if you try to collect it once the people are enrolled and have paid their tuition. You're not necessarily going to get every student to pay, even if you bill them or even if you ---- you're not. You're going to lose money. That's correct. In fact, there's a really good book about it by the legal scholar Cass Sunstein called Nudge, saying that, hey, opting, making people opt out usually makes them make the right decision in the first place. So, yes, we will induce expert testimony in that regard. In addition to the naked reality that it doesn't seem like anyone is opting in. However, with the operation of the state statute, that has become irrelevant. So we do believe that the district court got it absolutely wrong by saying that discriminatory intent or retaliatory intent was irrelevant. We do believe that it was a substantial benefit. As a matter of fact, the minute the benefit was taken away, ASA went broke and has had no monies from students since. So we ask that the court reverse the district court. Is it able to operate? Barely. It did have some, Judge Wardlaw, some reserves. But those reserves are quickly running out. And with the court's permission, I'd like to reserve the balance of my time. All right. Thank you. Good morning. May it please the court, my name is Joseph Canfield. I am counsel for the Arizona Board of Regents. The district court properly dismissed the association's First Amendment retaliation claim against the board because the board's decision to change the manner in which it collected the association's dues does not implicate the First Amendment. The association is a private organization. It is unaffiliated with the Board of Regents or the universities. It's a separate 501c4 autonomous organization formed specifically so it could be separate from the Board of Regents. The board's decision to collect the association's fees or dues and change that collection method to an opt-in scheme does not invoke the employment and related retaliation line of cases relied upon by the association. Rather, it invokes the speech subsidy cases that were cited by the board and relied upon by the district court. Did the district court treat this as a retaliation case? No, Your Honor. The district court treated it as a speech subsidy case. How did the district court go off base? Because the district court If you read the complaint, the complaint is nothing but a retaliation complaint. Right, Your Honor. We retaliate. You know, they allege the board retaliated against us because we engaged in political activity contrary to the governor or whoever's desire. And immediately after that, they say we're not going to collect anymore. Because, Your Honor, quite simply, the district court relied upon the cases that are directly on point, the Davenport, the Asursa, the speech subsidy cases that have been handed down. Did you argue that this was not a retaliation case? Yes. Yes, we did. You argued it was not a retaliation case? Yes. We argued that it was a speech subsidy case controlled by the United States Supreme Court precedent. I don't, you know, I can't speak for my colleagues, but I don't find that argument at all relevant here. I don't either. Or the union dues cases. I don't find them relevant either. This is a classic retaliation case. Well, Your Honor, we just respectfully disagree. I mean, we see the No, I mean, you know, I just, you know, read the complaint and, you know, it's a retaliation case. Right. And what we've argued You can't convert it to something else. We've argued that that line of cases is unavailable. Well, so First Amendment retaliation isn't only in the public employee line of cases. There's First Amendment retaliation cases, you know, for other sorts of actions. Yes, Your Honor. Do you agree with that? I agree that the, in looking at, so in the, with respect to the retaliation line of cases, they involve a valuable government benefit that's been deprived as a result of So let me ask you, did the, was, did the association engage in protected speech, political speech? Well, accepting the allegations is true, yes. The association was involved in electoral activities with respect to a ballot measure, which they argue was, was the, precipitated the retaliatory And was that speech a substantial or motivating factor for the Board of Regents to change its policies? Well, of course, we will deny that, Your Honor, but that That's what they allege. Accepting the allegation is true, yes. Okay. And would changing its policy for fee collection chill, have the, have the effect of chilling future political speech by the associated students? Well, Your Honor, that assumes that this is a valuable public benefit that the association has been deprived of. Well, obviously, that's something that maybe you should, I mean, the reason that we're here is because the district court dismissed this saying they didn't state a claim. But if they've alleged these three things and you're disputing, that states a claim. That's the classic First Amendment retaliation claim. You're saying, well, taking the complaint is true, they've alleged those things. So they have manifestly alleged a First Amendment retaliatory claim. Now, you need to then show, and this is all questions of fact and it's not to be dismissed at an early stage, that, you know, either they weren't engaged in political speech or this changing the fee structure would not chill their speech and that this was not a substantial part of the motivation for the regents to do that. And it's a classic question of fact. Your Honor, if you agree that the retaliation line of cases are invoked here, well, then yes. But we have, we assert, and the district court agreed with us, that you don't get there. It's like putting your head in the sand. This is a classic First Amendment retaliation case. Well, Your Honor, but I think you would be carving out a major exception to these speech subsidy line of cases. I don't think so. I've written a lot of them myself. I don't think so. When you read the complaint, see, my problem that I have is they alleged a particular kind of First Amendment case. The district court says, well, that's, you've got something else here, so I'm not even going to deal with that. You've got something else. And on that something else, you lose. Well, then, Your Honor, you know, these retaliation claims were raised in the speech subsidy cases. And they have been rejected by both the Supreme Court and some of your sister circuits, cases we cite, the Walker case, for example, the Bailey case out of the Sixth Circuit. So these issues were raised. So when the government is collecting dues for a union, or in this case the student association, there's no public money that passes hands. But what really is troubling about this case, and that neither you or your clients or the district court even understand why this is a retaliation case, apparently, is that we are talking about a university context where freedom of speech and freedom of expression is the most important thing. And these students, apparently, according to their allegations, were politically active. The kind of speech that set the core of the protection of the First Amendment. And they lost something valuable because of their political activity. Because the governor, Janice Brewer, didn't agree, didn't like what they were doing. Well, I don't think she's allowed to do that. I don't know if that was an allegation. That's an allegation. The governor? Yeah, it says. And it's either in the complaint or it's in the... I guess it's several members of the board. Well, somehow there's some allegation about Janice Brewer in the... The governor serves as an ex-officio member of the board. So perhaps that's what it is. But I think that's unfair. So probably... I think it's unfair to single out the governor. Because I don't recall that in the complaint. Anyway, we are in a public university setting, right? Arizona isn't... The Board of Regents oversees Arizona's three universities. Three public universities. Yes, correct.  But, Your Honor, I think maybe what we're missing here is that this is... Students Association at one time fell under the jurisdiction of the board as any other student group. So when the association talks about these cases involving university speech and all that, I think that that misses the mark. Because at some point that association decided to separate itself by mutual agreement with the board. Well, maybe... It's a C-4. It's a separate autonomous entity. Why is that relevant? It's still comprised of your public university students, right? It's on an opt-in... Sorry, an opt-out basis. So what's happening is that if you want to become... Until the board changed its policy, and ultimately state law prevents this from happening in the future, every student that pays their tuition has to pay and join the association. And they can opt out. And, by the way, these opt-out systems are in doubt at the moment. In the public, in the union dues area. But how is that, Your Honor? This isn't a union. This is students. It's the same idea, though. It's the same... The district court found it sufficiently analogous. I think it's directly on point. I mean, you read ESRSA. I don't know how you can read ESRSA and not conclude that the Arizona Student Association sits in the same position as the unions do in those cases whereby they are able to extract, through the public employment payroll deduction system, dues from those that do not wish to join. And we have five students who sought to intervene who do not wish to be members of the association. That's good. That would be another factual issue. But I guess the union... I mean, the union cases are dealing with employment. I mean, there's a possibility of loss of employment. There's no possibility that someone can't be a student at the Arizona, I don't know which university we're talking about. If they don't pay their full tuition, if they pay their tuition minus $2, they're not going to be a student. How is that any different? I don't see any... Because they can opt out. You already have your opt-out system. But so can the employees in the union cases. Is that what they're told when they were collecting the money, that if you don't pay the $2, you're out of here? If they're... You're not going to be enrolled as a student?  If you don't pay $2, we're going to forward it over to the student. It's baked in. You're out of here? It's baked into the tuition. So you have to pay it. And you have to then... That's it. And you didn't answer my question. Does the university tell them if you don't pay the $2, if he short-changes $2, you're not enrolled? Well, I would assume that if you don't pay your full tuition, you're not going to be enrolled, Your Honor. So... Seriously? I mean, with minus $2? Your Honor, I mean, tuition is what it is. That's what's so – I mean, I'm not – I think we're splitting hairs here. I thought this was not tuition. It was they were just collecting these dues and... When they collected tuition. From a private association. You know, there's plenty of retaliation cases involving, like, contractors. Right. But these are valuable... Employs a contractor, and then the contractor goes out and supports another political entity or something. And they get their contract terminated. Right. And these – so... Private entity, private party, and everything. And what distinguishes those cases from this is the fact that what the student association is being deprived of is not a valuable public benefit. It's not public employment. It's not a work as a result of a government contract. It's not a tax exemption. Everything – all of those involve public money that is being withheld as a result of the government's disagreement with someone's speech. Well, I have to say we get a lot of interesting cases from Arizona. Thank you. Your Honor, let's – there are any further questions? I have no answer. No. Do you have any? No. Okay. I'll be very brief. This Court knows more than probably any other because the case originated in the Ninth Circuit. In the Garcetti v. Cibolo's case, the United States Supreme Court said, hey, when government employees are speaking as employees, their First Amendment rights are at their lowest. And when a government employer is speaking as an employer rather than as a And I think that principle is applicable in this case in reference to the union cases. The government, when dealing with unions, is acting as an employer. The union employees are acting as employees. They're bargaining. The First Amendment interests are at their lowest there. As in the Garcetti case, the Supreme Court said on page 418, quote, the government as employer indeed has far broader powers than it does the government as sovereign. In contrast, the Supreme Court recently said in Grutter v. Bollinger, quote, we have long recognized that given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition. That makes all the difference in the world. This is a retaliation case. It was pled that way. In fact, in our complaint, we did mention that Governor Brewer was against Proposition 204. Three weeks after ASA supported Proposition 204, the funding that it had enjoyed for over a decade was stripped away, rendering it broke, and in contravention of its First Amendment rights. If the Court doesn't have any further questions, I'll sit down. All right. Thank you. Thank you. Arizona Students Association v. Arizona Board of Regents is submitted, and this session of the Court is adjourned for today.
judges: Noonan, Wardlaw, Paez